IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| AMANDA HAROLD,<br><br>        *Plaintiff,*<br><br>v.<br><br>TMC ENTERPRISES, LLC, AND<br>TMC FINANCE, LLC,<br><br>        *Defendants.* | CASE NO. 6:16-CV-00025<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

  Amanda Harold ("Plaintiff") filed this action against TMC Enterprises, LLC ("JD Byrider" or "Defendant") and TMC Finance, LLC ("CNAC" or "Defendant") pursuant to the Truth in Lending Act ("TILA"), 14 U.S.C. § 1601, *et seq.*, the Credit Repair Organization Act ("CROA"), 15 U.S.C. § 1679, *et seq.*, and the Magnuson-Moss Warranty Act, 15 U.S.C § 2301, *et seq.* This Court has jurisdiction over her federal question claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1640(e). Plaintiff brought supplemental state and common law claims, pursuant to 28 U.S.C. § 1367, for violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-201, *et seq.*, fraud, constructive fraud, and unconscionability. The case centers on Plaintiff's purchase and financing of a 2007 Chevrolet Cobalt from JD Byrider and CNAC, respectively, in May 2015.

  This matter is before the Court upon Defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. (Dkt. 8). Taking Plaintiff's factual allegations as true at this stage, I find that Plaintiff has adequately pled all her claims, and Defendants' Motion to Dismiss will be denied.

1

## I. Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

## II. Facts Alleged

In May 2015, Plaintiff visited JD Byrider to inquire about purchasing a vehicle. Compl. ¶ 14. Based upon her credit history, Plaintiff was told that she would need a co-signor in order to finance and purchase a vehicle, which she obtained. *Id.* ¶¶ 16–17. Plaintiff was also told by sales personnel that there were only three cars available for her to purchase. *Id.* ¶ 18. Because Plaintiff required a four-door vehicle, she was limited to only two vehicles available at JD

2

Byrider. *Id.* ¶¶ 20–21. Personnel at JD Byrider informed Plaintiff that they offer a plan, which accompanies any vehicle, to help purchasers build credit on a credit report. *Id.* ¶ 36.

Plaintiff selected a 2007 Chevrolet Cobalt ("the vehicle") with 103,724 miles, a history of front-end damage, and a price of $14,995.00. *Id.* ¶¶ 22, 25, 35. The MSRP for the vehicle when it was new in 2007 was $14,295.00, and the NADA and Kelley Blue Book retail prices for the vehicle when purchased by Plaintiff ranged $5,000 to $6,000. *Id.* ¶¶ 26–27. Plaintiff agreed to an interest rate of 24.989%, and she was required to make bi-weekly payments of $206.25. *Id.* ¶¶31–32. Plaintiff has remained current on her payments. *Id.* ¶ 55.

Plaintiff signed a retail installment sales contract ("RISC") that stated, "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." (Dkt. 2-1 at 5). JD Byrider immediately assigned the RISC to CNAC, as it does with all of its RISCs. Compl. ¶ 23.

The vehicle has had persistent problems with the front-end. The vehicle shakes when driving, and it wears out tires prematurely. *Id.* ¶ 43. Plaintiff has asked JD Byrider to repair the vehicle, but these attempts have been unsuccessful. *Id.* ¶ 45. On at least one occasion, Plaintiff was forced to pay for the attempted repairs, and she missed work while waiting for the vehicle. *Id.* ¶¶ 48, 52. The most recent repair attempt required Plaintiff to leave the vehicle with JD Byrider for seven days. *Id.* ¶ 53. In addition, JD Byrider has failed to provide Plaintiff with any service or plan to build her credit. *Id.* ¶ 37.

JD Byrider and CNAC have a pattern and practice of selling and financing used vehicles at prices at or above the MSRP, their sale prices are typically within a narrow range, and they disclose nearly identical interest rates for most vehicle financing transactions. *Id.* ¶¶ 30, 33, 34.

### III. DISCUSSION

#### A.   First Cause of Action: Violation of the Truth in Lending Act

Based upon the facts above, Plaintiff asserts that Defendants violated the TILA by failing to disclose all financing charges as required. Compl. ¶ 63–65; 15 U.S.C. § 1638 (requiring that all financing charges be disclosed prior to the extension of credit). Plaintiff claims that, although a rate of 24.989%—which amounts to a financing charge of $11,811.05—was disclosed to Plaintiff, the price of the vehicle was inflated to hide additional financing fees buried within the sales price. *Id.* ¶ 61; (Dkt. 2-1 at 1).

Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted because a financing charge does not include the sales price of the vehicle. (Dkt. 9 at 2). They argue that an inflated sales price alone, absent proof that the financing price is higher than the cash price, is insufficient to state a claim under the TILA. *See Poulin v. Balise Auto Sales*, 2010 U.S. Dist. Lexis 33456, at *14–15 (D. Conn. Apr. 5, 2010). To support this position, Defendants provided an affidavit from JD Byrider stating that the same price would have been quoted to a customer seeking to pay cash rather than finance the purchase. (Dkt. 9 at 2). Thus, they argue that their disclosure of the interest rate and finance charge in the RISC was sufficient to satisfy the TILA, because TILA was not intended to require fair pricing, only proper disclosure.

Plaintiff responds by citing *Limitiaco v. Auction Cars.com*, LLC, No. 2:11-cv-370, 2012 WL 4911726, at *3 (D. Nev. Oct. 15, 2012) for the proposition that "[a] 'hidden' finance charge may exist where the price is above true market value." Furthermore, Plaintiff asserts that a "cash sales price might be meaningless if the vast majority of the seller's business is credit sales." *In re Russell*, 181 B.R. 6161. 621 (M.D. Ala. 1995). Plaintiff alleges in her brief that JD Byrider has a practice of selling only cars that are financed by CNAC, so there may be little or no history

4

of cash sales, and discovery will be needed in order to investigate further. (Dkt. 16 at 3). In fact, Plaintiff provided a transcript from a deposition from another case implying that JD Byrider has a practice of turning away potential cash customers. *Id.*

Ignoring Defendants' affidavit and Plaintiff's deposition transcript, which cannot be considered at this stage, *Mujahid v. M/V Hector*, 948 F.2d 1282 (4th Cir. 1991), I conclude that Plaintiff has a plausible claim that Defendants' artificially inflated the sales price for the vehicle because it was financed as opposed to purchased with cash. The excessive sales price in relation to the NADA and Kelley Blue Book value creates an inference that JD Byrider would not truly charge the same price to a cash customer, and thus failed to disclose the true extent of the financing charges. In fact, Defendants concede that "[t]he dispositive issue for TILA purposes thus necessarily must be whether the same price would have been quoted to a cash customer." (Dkt. 17 at 3).

I need not reach the legal question of whether an inflated sales price *alone* is enough to establish a hidden financing fee, because the facts alleged by the Plaintiff create a reasonable inference that JD Byrider would not charge the same price to a cash customer, which in turn implies that a hidden finance charge was baked into the sale price. Taking Plaintiff's factual assertions as true at this stage, she has stated a claim under the TILA upon which relief can be granted because she has adequately alleged that JD Byrider has baked hidden financing charges into the sales price of their vehicles. Thus, Defendants' motion to dismiss as to the TILA claims will be denied.

B. <u>Second Cause of Action: Violation of the Virginia Consumer Protection Act</u>

Defendants ask the Court to dismiss the second cause of action—violation of the Virginia Consumer Protection Act—as to CNAC. (Dkt. 9 at 3). Defendants argue that because CNAC is not a "supplier" within the VCPA, the statute does not apply to CNAC as a matter of law. *Id.* at

5

3. The statute defines a "supplier" as "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." Va. Code § 59.1-198(5). Defendant argues that because Plaintiff did not contract with CNAC and it did not sell her the vehicle, CNAC cannot be a "supplier" within the VCPA. (Dkt. 9 at 3). Under the plain terms of the statute, Defendant is correct that CNAC is not a supplier and does not appear subject to the VCPA.

Plaintiff responds to this assertion by reminding the Court that immediately after Plaintiff and JD Byrider completed the RISC, it was assigned to CNAC. Compl. ¶ 23. According to Plaintiff, the Federal Trade Commission's "Holder Rule," 16 C.F.R. § 433.2, provides that the holder of a consumer credit contract is subject to all claims and defenses that the debtor could assert against the seller of goods. (Dkt. 16 at 4). Because CNAC is now the holder of the RISC, Plaintiff contends that CNAC is subject to her claims under the VCPA. More specifically, Plaintiff argues that the FTC Holder Rule forces CNAC, as the holder, to "stand in the shoes" of JD Byrider, who is clearly a supplier under the VCPA. Plaintiff notes that the FTC Holder Rule requires the following clause be inserted in retail installment sale contracts:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(Dkt. 2-1 at 5). Plaintiff argues that because JD Byrider is clearly the seller (that is, the supplier under the VCPA), and CNAC is the holder who is "subject to all claims and defenses which the debtor could assert against the seller," the plain terms of this clause of the contract make CNAC liable under the VCPA. *Id.* at 4–5.

Defendants argue that despite the plain language of this clause, the FTC's Statement of

Basis and Purpose ("SBP") for the Holder Rule—as well as subsequent case law—paint a different picture about the meaning of the FTC Holder Rule and the accompanying contract clause. The SBP states that the clause permits a buyer who was aggrieved by a breaching seller to "defend a creditor suit for payment of an obligation by raising a valid claim against the seller as a setoff," or to bring "an affirmative action against a creditor who has received payment for a return of monies paid on account." 40 Fed. Reg. 53,524 (Nov. 18, 1975). The SBP appears to limit this affirmative use to "where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified." *Id.* Some courts have interpreted this language to limit the applicability of the FTC Holder Rule to narrow circumstances. *See, e.g.*, *Irby-Greene v. M.O.R., Inc.*, 79 F. Supp. 2d 630, 636 (E.D. Va. 2000) (refusing to apply the FTC Holder Rule where the seller lied about an automobile's mileage); *Crews v. Altavista Motors, Inc.*, 65 F. Supp. 2d 388, 391 (W.D. Va. 1999) (limiting the use of the FTC Holder Rule to cases where the buyer received "little or nothing of value"); *Ford Motor Credit Co. v. Morgan*, 536 N.E.2d 587, 589–90 (Mass. 1989) ("Thus, the function of the rule is to allow consumers to stop payments, and, in limited circumstances, . . . where equity requires, to provide a return of monies paid.").

More recently, however, many courts have chosen to interpret the FTC Holder Rule—and its accompanying contract clause—in accordance with the plain meaning of the text. *See, e.g.*, *Johnson v. Auto Showcase of Bel Air, Inc.*, No. CV WMN-15-3839, 2016 WL 1597115, at *2 (D. Md. Apr. 21, 2016); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 544 (E.D.N.Y. 2006); *Beemus v. Interstate Nat. Dealer Servs., Inc.*, 823 A.2d 979, 984 (Pa. Super. Ct. 2003). In fact, the FTC clarified the meaning of the Holder Rule in a 2012 advisory opinion, stating that the SBP quotes discussed above were taken out of context. Letter from Donald S. Clark, Secretary, FTC, to Jonathan Sheldon, et al., National Consumer Law Center (May 3,

7

2012) [hereinafter FTC Advisory Opinion], http://ftc.gov/os/2012/05/120510advisoryopinion holderrule.pdf; *see* Press Release, Fed. Trade Comm'n, FTC Opinion Letter Affirms Consumers' Rights under the Holder Rule (May 10, 2012), http://ftc.gov/opa/2012/05/holderrule.shtm. The FTC stated that "the Rule is unambiguous, and its plain language should be applied." FTC Advisory Opinion at 3. In fact, the FTC explicitly repudiated the approach of *Ford Motor Credit Co. v. Morgan* and its progeny. FTC Advisory Opinion at 4–5. My opinion in *Crews v. Altavista Motors, Inc.*, 65 F. Supp. 2d 388 (W.D. Va. 1999),—which relied upon *Morgan* and was appropriate at the time—is not consistent with the subsequent FTC Advisory Opinion and the trend in other courts. Therefore, I decline to follow the reasoning from *Crews*.

Considering the plain language of the contract and the FTC Advisory Opinion, I find that CNAC, as a holder, is "subject to all claims and defenses which the debtor could assert against the seller." (Dkt. 2-1 at 5). The Virginia Supreme Court has made it clear that "[w]hen the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 271 Va. 574, 578 (2006). There is no reason here to deviate from that bedrock standard of contract interpretation, so Defendants' motion to dismiss the VCPA claims will be denied.

C.  Third Cause of Action:  Fraud and Constructive Fraud

Defendants' motion to dismiss the fraud claim takes the form of two separate arguments: (1) Plaintiff's claim lacks the specificity required of a fraud claim; and (2) in the alternative, Plaintiff's constructive fraud claim is barred by the "economic loss rule." These arguments will be discussed in turn.

1.  *Plaintiff provided sufficient facts to establish a fraud claim against Defendants*

Plaintiff's complaint alleges fraud and, alternatively, constructive fraud. Under Virginia law, fraud requires six basic elements be satisfied: "(1) a false representation, (2) of a material

8

fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him." *Thompson v. Bacon*, 255 Va. 122, 126 (1993).

Defendants argue that Plaintiff failed to plead all elements with sufficient specificity. (Dkt. 9 at 4). Allegations of fraud are held to a higher pleading standard. Fed. R. Civ. P. 9(b). Defendants analogize the instant case to *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849 (1978), but *Tuscarora* is inapplicable to the instant case. Although fraud is a state common law cause of action, pleading requirements are procedural rules and thus governed by federal law. *NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 692 F. Supp. 327, 330 (S.D.N.Y. 1988). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The claim must identify the who, what, where, when, and how." *U.S. ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 917 (8th Cir. 2014).

Although Plaintiff does not name the specific employee of JD Byrider who made the alleged misrepresentations (the complaint says "sales personnel" made the misrepresentations), she identifies the content of the misrepresentations (a credit-building plan and only three eligible vehicles), as well as the date and location of the misrepresentations (May 19, 2015 at JD Byrider in Lynchburg, Virginia) with sufficient specificity to allow Defendants to prepare a defense to the claim of fraud. Compl. ¶¶ 18, 36, 77–85. The complaint alleges facts satisfying all six elements of fraud in Virginia and provides enough specificity to satisfy Rule 9(b) and allow the parties to engage in meaningful discovery. *Id.*

Because CNAC is bound by the Holder Rule language in the contract, as discussed above in Section III.B, it is liable for any fraud claims brought by Plaintiff against the seller. As such the fraud claims in the complaint satisfy the Rule 12(b)(6) standard and will not be dismissed.

9

### 2. The "economic loss rule" does not bar Plaintiff's constructive fraud claim

Plaintiff's complaint states that "Defendants made false representations to Ms. Harold intentionally and knowingly or alternatively, innocently or negligently." Compl. ¶ 81. The alternative grounds alleged establish a claim for constructive fraud, which requires essentially the same elements as fraud, but the misrepresentation can be made innocently or negligently as long as it was made "so as to induce a reasonable person to believe it." *Henderson v. Henderson*, 255 Va. 122, 126 (1998). Considering that the statements were made by a sales representative in the hopes of completing a sale, it can be inferred that the misrepresentations were made "so as to induce a reasonable person to believe" them. *Id.* In fact, Defendants' motion does not directly challenge whether Plaintiff has alleged facts sufficient to state a claim of constructive fraud.

In the Memorandum in Support of Motion to Dismiss, Defendants argue that even if Plaintiff established a claim for constructive fraud, such a claim is barred as a matter of law by the "economic loss rule." (Dkt. 9 at 5). The economic loss rule is designed to thwart the "efforts of lawyers to turn every breach of contract into a tort." *City of Richmond, Va. v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990). The economic loss rule holds that "when a plaintiff alleges and proves nothing more than disappointed economic expectations assumed *only by agreement*, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Filak v. George*, 267 Va. 612, 618 (2004) (emphasis added). Here, Defendant argues that Plaintiff only suffered the disappointment of overpaying for a vehicle.

Defendant's invocation of the economic loss rule is misplaced. Plaintiff's constructive fraud claims are for more than disappointed economic expectations sounding in contract. She alleges that JD Byrider's misrepresentations regarding their credit-building plan, as well as their misrepresentation regarding the number of vehicles available for purchase, induced her to buy a

car she otherwise would not have purchased at a price that she otherwise would not have paid. Compl. ¶ 77–85. The claim centers around misrepresentations that *induced* the transaction, which is best understood as the tort of fraud, rather than a failure to perform an aspect of the deal, which is best understood as a contract claim.

The Brief in Opposition to Defendants' Motion to Dismiss highlights the chronology of events alleged in the complaint. All of the misrepresentations that constitute the alleged constructive fraud took place *before* the contract was signed. (Dkt. 16 at 8). Plaintiff is not alleging that Defendants' constructive fraud was a breach of contract; rather, she is arguing that Defendants' constructive fraud induced the *signing* of a contract she would not have otherwise signed. Although a contract is involved, this is a matter of tort law.

The Supreme Court of Virginia has stated: "The question whether the economic loss doctrine applies requires a court first to determine whether a cause of action sounds in contract or tort, ultimately by ascertaining the source of the duty violated." *Abi-Najm v. Concord Condominiium, LLC*, 280 Va. 350, 361 (2010) (internal quotations omitted). The purported misrepresentations occurred before the contract was signed, so any duty owed to the Plaintiff could not have arisen out of contract law. *See id.* at 363–64 ("The fraud alleged by the [plaintiff] was perpetrated by [the defendant] before a contract between the two parties came into existence, therefore it cannot logically follow that the duty [the defendant] allegedly breached was one that finds its source in the Contracts.").

As a result, I will deny Defendants' motion to dismiss the claim of constructive fraud, because the economic loss rule does not apply to this case. Likewise, the same Holder Rule analysis discussed above in Section III.B applies here, so the constructive fraud claim against CNAC will also be retained.

D. Fourth Cause of Action: Credit Repair Organization Act

Defendant asks the Court to dismiss Plaintiff's claim under the CROA on the grounds that, as a matter of law, JD Byrider and CNAC are not subject to the CROA. The CROA provides, in relevant part, that it applies to a credit repair organization ("CRO"), defined as any:

> person who uses any instrumentality of interstate commerce or the mails to sell, provide or perform (or represent that such person can or will sell, provide or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
> (ii) providing advice or assistance to any consumer with regard to any activity or service in clause (i) . . . .

15 U.S.C. § 1679a(3). Defendants assert that they are not CROs because they do not offer any credit repair services. They claim that their primary objective "was to finance a purchased vehicle." (Dkt. 9 at 7). They argue that any credit score improvement is simply a collateral effect of taking on and paying off a car loan. *Id.* Alternatively, Defendants argue that Plaintiff failed to assert any valuable consideration paid for such credit repair services.[1]

The facts as alleged directly contradict Defendants' claim that they are not CROs. Plaintiff states that "sales personnel of JD Byrider emphasized the *plan* and *program* that JD Byrider offers when purchasing a vehicle with them to build credit or a credit record." Compl. ¶ 36 (emphasis added). Taking Plaintiff's factual assertions as true, promising a "plan and program" is clearly more than simply explaining the collateral effect of taking on good debt. While it may be true that Plaintiff is misconstruing the statements of JD Byrider sales personnel, the Court must accept Plaintiff's facts as true at the Rule 12(b)(6) stage.

---

[1] In order to demonstrate that no additional consideration was paid for credit repair services, Defendants once again rely on an affidavit asserting that the cash price and financing price would be the same. Not only is this claim dubious based on the exorbitant purchase price, but the affidavit is not proper evidence at the Rule 12(b)(6) stage. As such, this assertion was disregarded when ruling on this motion. *Mujahid v. M/V Hector*, 948 F.2d 1282 (4th Cir. 1991).

As to the argument that no valuable consideration was paid in exchange for credit repair services, once again the Court must defer to the factual allegations made by Plaintiff. Compl. ¶ 92 (alleging that the consideration for credit repair services were included in the high sale price). Furthermore, Plaintiff provided case law to support the proposition that the valuable consideration for the credit repair services need not be listed separately from other consideration in a contract. *See, e.g.*, *Banks v. Capital Credit Alliance, Inc.*, 2005 WL 1563220, at *2 (N.D. Ill. June 28, 2005). Taking the alleged facts as true, Plaintiff has made out a case against JD Byrider under the CROA.

Defendants argue, in the alternative, that Plaintiff has failed to state a claim under the CROA against CNAC. (Dkt. 9 at 7–8). The complaint states that sales personnel from *JD Byrider* promised the credit repair services, not employees of CNAC. Compl. ¶ 36. Plaintiff responded to Defendants' motion by once again invoking the FTC Holder Rule, (Dkt. 16 at 7). As discussed above in Section III.B, because CNAC is the holder of the contract, it is "subject to all claims and defenses which the debtor could assert against the seller." Thus, Plaintiff has sufficiently pled CROA claims against both JD Byrider and CNAC. The CROA claims contained in the complaint will not be dismissed.

## IV. Conclusion

Based upon the foregoing, Defendants' Motion to Dismiss will be denied. All claims against JD Byrider and CNAC either were not challenged in Defendants' motion or were pled sufficiently to satisfy Rule 12(b)(6).

Entered this  17th  day of October, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

13